KAREN G. TWADDELL, Plaintiff v. GEORGE FRANKLIN ANDERSON, Defendant

No. COA99-90

(Filed 21 December 1999)

**1. Child Support, Custody, and Visitation— support—foreign order—UIFSA—registration in North Carolina**

The trial court erred by finding that plaintiff had not met the child support registration requirements of UIFSA (the Uniform Interstate Family Support Act) where plaintiff's registration statement was sufficient to satisfy N.C.G.S. § 52C-6-602(a)(1), although some of the information could be found only upon a close reading.

**2. Child Support, Custody, and Visitation— support—foreign order—intervening North Carolina order**

The trial court erred in a child support action by finding that a North Carolina URESA order superseded and effectively voided an earlier California order. Both orders were prior to the enactment of UIFSA and, under URESA, more than one state could have simultaneous jurisdiction over a case and a subsequent order does not necessarily nullify a prior order. No North Carolina order in this case made any findings pertaining to nullification of the California order or to exclusive jurisdiction.

**3. Child Support, Custody, and Visitation— support—jurisdiction—foreign order**

The trial court's conclusion that North Carolina had sole jurisdiction over a child support action violated the federal Full Faith and Credit for Child Support Order Act (FFCCSOA) even

though that act was passed after the arrearages in question accrued under a 1981 California order. The FFCCSOA is remedial and was intended to have retroactive application.

**4. Child Support, Custody, and Visitation— support—full faith and credit—personal jurisdiction of foreign state**

A California child support order was entitled to full faith and credit in the courts of North Carolina where the California court had personal jurisdiction over defendant and none of the exceptions allowing collateral attack applied.

**5. Child Support, Custody, and Visitation— support—foreign order—statute of limitations**

The trial court erred in a child support action by concluding that the statute of limitations precluded enforcement of a 1997 California order which involved arrearages from a prior order. Once the arreages are reduced to judgment, that judgment is entitled to full enforcement in North Carolina for a period of ten years after its entry.

**6. Pleadings— Rule 11 sanctions—California child support order**

Plaintiff's counsel had grounds for seeking the registration of a California child support order and did not violate N.C.G.S. § 1A-1, Rule 11.

Appeal by plaintiff from order entered 29 October 1998 by Judge Karen A. Alexander in Craven County District Court. Heard in the Court of Appeals 21 October 1999.

*Michael F. Easley, Attorney General, by Gerald K. Robbins, Assistant Attorney General, for plaintiff-appellant.*

*McCotter, McAfee & Ashton, PLLC, by Rudolph Alexander Ashton, III, and Robert J. McAfee, for defendant-appellee.*

EDMUNDS, Judge.

This appeal arises from plaintiff's attempted registration, pursuant to the Uniform Interstate Family Support Act, of a foreign support order. On motion of defendant, the trial court vacated and dismissed the attempted registration and found sanctionable plaintiff's attempt to register the foreign support order. We reverse the order of the trial court.

On 16 June 1981, a superior court in California entered a stipulated support order pursuant to which defendant George Franklin Anderson was required to pay $200.00 per month in spousal support to plaintiff Karen Anderson (now Karen G. Twaddell) and $200.00 per month for each of their two children. Payments were to begin 1 July 1981. The provision for child support was incorporated into the court's 29 January 1982 order of legal separation, but this order did not include a requirement for spousal support. When the parties divorced on 14 June 1982, the California court incorporated the 29 January 1982 order into the divorce decree.

On 9 September 1986, plaintiff filed in California a petition for support pursuant to the Uniform Reciprocal Enforcement of Support Act (URESA). The petition requested an order requiring defendant to (1) pay monthly child support of $400.00, (2) provide health insurance for his children, (3) pay $22,536.00 in child support arrears, and (4) pay $1,400.00 in spousal support arrears. In accordance with the terms of URESA, the petition was forwarded to the Clerk of Court in Craven County, North Carolina, where defendant was then living. The North Carolina court entered an order on 14 November 1986 (signed 6 June 1989) finding no arrearage in defendant's child support and requiring defendant to pay a total of $220.00 per month for his two children. Although the court further found that defendant was in arrears in his spousal support in an unspecified amount, it determined that defendant would not be held in contempt for the arrearage, but that plaintiff was entitled to a civil judgment against defendant "for said arrearages."

The North Carolina court held a show cause hearing on 26 June 1987 for defendant's alleged failure to comply with its 14 November 1986 order. The court found defendant in contempt and ordered that he could purge his contempt by paying his arrears of $230.00 plus a nominal service charge. On 28 October 1988, the trial court again found defendant in contempt for failure to pay his monthly child support obligations.

On 16 June 1993, the Craven County Clerk of Superior Court, in accordance with N.C. Gen. Stat. §§ 52A-29 and -30 (1992) (repealed 1996), sent defendant a Notice of Registration of Foreign Support Order. The Notice alleged that defendant owed in excess of $36,000.00 in unpaid child support as of 30 September 1992 and that he was to pay $400.00 per month in ongoing child support. Attached to the Notice were copies of the California order and the final judg-

ment of legal separation. Plaintiff voluntarily dismissed this attempted registration on 29 July 1993.

Later, the New Bern Child Support Enforcement Office (Support Office) attempted to have $94.01 per week for child support withheld from defendant's salary. On 29 November 1993, defendant filed a Motion for Immediate Restraining Order to prevent the Support Office from garnishing his wages. After issuing a temporary injunction, the trial court on 16 December 1993 (signed 24 March 1994) permanently enjoined the Support Office. At the same time, the court found defendant owed a child support arrearage of $357.17 and set out a schedule for repayment. The court further found that defendant's only child support obligation was to pay $220.00 per month and that no state or local official was to take any steps to collect any arrearage other than that set out in its order. The North Carolina court conducted another hearing on 2 June 1994, and, after determining that there was an arrearage of $141.78, found defendant in contempt.

On 2 September 1997, a California superior court entered an order setting forth child support arrearage as of 31 December 1996 in the amount of $86,509.54 and spousal support arrearage of $4,041.72, all of which accrued under the 1981 California order. On 15 September 1997, the North Carolina district court terminated defendant's child support obligation, finding that both children had reached the age of majority. The court also determined that all arrears had been paid in full in accordance with the 16 December 1993 North Carolina order.

On 7 July 1998, a second Notice of Registration of Foreign Support Order was filed with the Craven County Clerk of Superior Court. The order registered pursuant to this second Notice of Registration was the 2 September 1997 California order cited in the preceding paragraph. On 21 August 1998, defendant filed in Craven County a Petition to Vacate Registration and to Dismiss Attempted Registration of Foreign Support Order. The matter came for hearing, and on 29 October 1998, the trial court entered an order that both dismissed plaintiff's attempted registration and held that plaintiff's actions in attempting the registration were sanctionable under N.C. Gen. Stat. § 1A-1, Rule 11 (1990). From this order, plaintiff appeals.

I.

[1] Plaintiff first contends the trial court erred in finding that she failed to comply with the registration requirements of the

Uniform Interstate Family Support Act (UIFSA). *See* N.C. Gen. Stat. §§ 52C-1-100 to 52C-9-902 (1999). Any order of support issued by a court of another state may be registered in North Carolina for enforcement. *See* N.C. Gen. Stat. § 52C-6-601 (1999). To register such a foreign order, the documents set out in N.C. Gen. Stat. § 52C-6-602(a) (1999) must be submitted to the tribunal for the county in which the obligor resides. The trial court found that plaintiff's registration did not contain certain required documentation.

Under URESA, *see* N.C. Gen. Stat. §§ 52A-1 to -32 (1992) (repealed 1996), which was replaced by UIFSA, registration was proper so long as the plaintiff "substantially complied with the requirements of the statute." *Silvering v. Vito*, 107 N.C. App. 270, 274, 419 S.E.2d 360, 363 (1992). Because "[b]oth URESA and UIFSA were promulgated and intended to be used as procedural mechanisms for the establishment, modification, and enforcement of child and spousal support obligations," *Welsher v. Rager*, 127 N.C. App. 521, 524, 491 S.E.2d 661, 663 (1997) (citing N.C. Gen. Stat. § 52C-3-301 official comment), we hold that, under UIFSA, as under URESA, substantial compliance with the requirements of section 52C-6-602 will suffice to accomplish registration of the foreign order.

Plaintiff contends she was in substantial compliance with the statute. The provisions in dispute are section 52C-6-602(a)(1), which requires that a registration request include a "letter of transmittal to the tribunal requesting registration and enforcement," and section 52C-6-602(a)(5), which requires that the registration request include the "name and address of the obligee and, if applicable, the agency or person to whom support payments are to be remitted." The record indicates that plaintiff submitted a "Registration Statement," which contained the case number, date, and county of the California order; the parties to the action and their respective addresses and employers; and the support amount, date of last payment, and total amount of arrears. The Statement was signed by the Records Custodian in California and notarized, then forwarded to the Craven County Clerk of Court. We hold that this material is sufficient to satisfy section 52C-6-602(a)(1). Plaintiff's packet also included the name and address of the California agency to which support payments were to be remitted. Although this information may be found only upon a close reading of plaintiff's submitted material, we hold that plaintiff also substantially complied with section 52C-6-602(a)(5). Accordingly, the trial court erred in finding that plaintiff had not met the registration requirements of UIFSA.

TWADDELL v. ANDERSON

[136 N.C. App. 56 (1999)]

## II.

**[2]** Next, plaintiff contends the trial court erred in concluding that the 1986 North Carolina intervening order superseded the 1981 California order so that when defendant satisfied his responsibilities under the North Carolina order, all duties under the California order also were satisfied. The 1986 North Carolina order found that the "Court/Administrative Agency has jurisdiction of the parties and subject matter of this case." That order included no finding that jurisdiction in North Carolina was continuing or exclusive. Subsequent North Carolina orders reiterated that North Carolina had "subject matter jurisdiction" over the case. Pursuant to those prior North Carolina orders, the North Carolina court found in its 1998 order that, at plaintiff's request, North Carolina previously had taken continuing and exclusive jurisdiction over the case and that North Carolina was now the only court to have such jurisdiction over the case. The issue, therefore, is whether the 1986 North Carolina order, issued under URESA, had the effect of nullifying the original 1981 California support order.

Initially, we must determine whether to apply URESA or UIFSA in resolving this issue. We previously have held that UIFSA will apply to all support orders registered in North Carolina after 1 January 1996. *See Welsher*, 127 N.C. App. 521, 491 S.E.2d 661. However, the *Welsher* case dealt with a 1996 registration (pursuant to UIFSA) of a 1985 foreign support order. Accordingly, that case dealt with a foreign support order entered while URESA was the controlling law but registered after UIFSA replaced URESA. We face a different issue in the case at bar, where we must determine which statute to apply in interpreting an order entered in California in 1981, then registered and modified in North Carolina in 1986 pursuant to URESA, all prior to the enactment of UIFSA. Because this is a matter of first impression in North Carolina, we first look to other jurisdictions for guidance.

In *Child Support Enforcement v. Troxel*, 931 S.W.2d 784 (Ark. 1996), an Arkansas Office of Child Support Enforcement (OCSE) on 10 February 1995 petitioned an Arkansas county court of chancery to register a 1985 foreign divorce decree pursuant to UIFSA, which had replaced the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) in Arkansas in 1993. OCSE also sought child support arrearages against the defendant based on support ordered in the foreign divorce decree. The chancery court denied the petition, finding that a 1987 Arkansas RURESA support order had superseded the 1985

foreign divorce decree. On appeal, reasoning that because the chancery court was dealing with the effect of the 1987 Arkansas RURESA support order, the Arkansas Supreme Court determined that it must "construe the Arkansas RURESA statute in effect at the time of the 1987 Arkansas order." *Id.* at 785. We find the holding of the Arkansas Supreme Court logical and therefore persuasive. *See also State, Dept. of Revenue v. Valdez,* 941 P.2d 144 (Alaska 1997) (interpreting language of URESA to conclude that order of responding state did not nullify prior order of initiating state); *S.C. Dept. of Social Services v. Hamlett,* 498 S.E.2d 888 (S.C. Ct. App. 1998) (applying URESA to determine effect of superseding order on foreign support order).

Additionally, although URESA was repealed in North Carolina effective 1 January 1996, the repeal did not

affect pending actions, rights, duties, or liabilities based on the Act, nor does it alter, discharge, release, or extinguish any penalty, forfeiture, or liability incurred under the Act. After the effective date of this act, all laws repealed shall be treated as remaining in full force and effect for the purpose of sustaining any pending or vested right as of the effective date of this act and for the enforcement of rights, duties, penalties, forfeitures, and liabilities under the repealed laws.

Act of July 29, 1995, ch. 538, sec. 7(b), 1995 N.C. Sess. Laws 1962, 1979. Construing this language in light of Arkansas' holding in *Troxel,* we hold that the effect of the 1986 North Carolina URESA order on the 1981 California order shall be determined in accordance with URESA.

Under URESA, a subsequent order does not necessarily nullify a prior order. To the contrary, URESA stated: "[t]he remedies herein provided are in addition to and not in substitution for any other remedies." N.C. Gen. Stat. § 52A-4 (1992) (repealed 1996). URESA also contained an anti-nullification clause:

A support order made by a court of this State pursuant to this Chapter does not nullify and is not nullified by a support order made by a court of this State pursuant to any other law or by a support order made by a court of any other state pursuant to a substantially similar act or any other law regardless of priority of issuance, *unless otherwise specifically provided by the court.* . . . Amounts paid for a particular period pursuant to any

support order made by the court of another state shall be credited against the amounts accruing or accrued for the same period under any support order made by the court of this State.

N.C. Gen. Stat. § 52A-21 (1992) (repealed 1996) (emphasis added). Accordingly, under URESA, more than one state could have simultaneous jurisdiction over a case. *See Welsher*, 127 N.C. App. at 524, 491 S.E.2d at 663.

Consistent with the anti-nullification language of URESA, we previously have held that acceptance of payments under a URESA order issued in a foreign state and registered in North Carolina does not imply a relinquishing of all rights under the original foreign support order. *See Stephens v. Hamrick*, 86 N.C. App. 556, 358 S.E.2d 547 (1987). In *Stephens*, a South Carolina court entered an order providing that the plaintiff-wife would have custody of the children and that the defendant would pay $40.00 per week in child support. Subsequently, the plaintiff moved to Florida and the defendant moved to North Carolina. The plaintiff initiated an action in Florida for child support under URESA, the result of which was a North Carolina order directing the defendant to pay $75.00 per month in child support. Eighteen years later, the plaintiff registered in North Carolina the original South Carolina support order and sought to collect the deficiency between what the defendant paid under the North Carolina URESA order ($75.00 per month) and the original South Carolina order ($40.00 per week). The trial court dismissed the plaintiff's action, holding in part, that "by accepting payments under [the] North Carolina URESA order, plaintiff had abandoned her rights to child support payments awarded under a prior South Carolina support order." *Id.* at 558, 358 S.E.2d at 548. We reversed, holding:

> [I]t is clear that the trial court erred by concluding that plaintiff's acceptance of payments under the URESA order barred her rights under the South Carolina order. The plaintiff is entitled to bring an action to enforce the South Carolina order . . . and the defendant is entitled to receive credit, under N.C.G.S. § 52A-21, for the payments he made under the URESA order.

*Id.* at 558-59, 358 S.E.2d at 549. This holding is consistent with the majority of other jurisdictions that have addressed this issue. *See, e.g., Wearb v. Luks*, 708 So. 2d 181 (Ala. Civ. App. 1997); *Westberry v. Reynolds*, 653 P.2d 379 (Ariz. Ct. App. 1982); *Tanbal v. Hall*, 878 S.W.2d 724 (Ark. 1994); *Lorenzo v. Skowronski-Thompson*, 738 So. 2d 967 (Fla. Dist. Ct. App. 1999); *State ex rel. Holleman v. Stafford*, 584

TWADDELL v. ANDERSON

[136 N.C. App. 56 (1999)]

N.W.2d 242 (Iowa 1998); *Hamlett*, 498 S.E.2d 888. In the case at bar, neither the 1986 North Carolina order nor any subsequent North Carolina order made any findings pertaining to nullification of the California order or to exclusive jurisdiction. Although the 24 March 1994 order stated that "[o]ther than the arrears of $357.17 due and owing as of December 16, 1993, the Defendant has no other accumulated arrearage for the support and maintenance of the minor children born of the marriage," this order was entered upon defendant's motion to enjoin the New Bern Child Support Enforcement Office from garnishing his wages and increasing the amount withheld for child support; there is no indication that the California order was even before the court, much less that the court specifically intended to nullify that order. We therefore hold that the trial court erred in finding that the 1986 North Carolina URESA order, or any subsequent North Carolina order, superseded and effectively voided the earlier California order.

III.

[3] Next, plaintiff contends the trial court's conclusion that North Carolina had exclusive jurisdiction over the case violated the Full Faith and Credit for Child Support Order Act (FFCCSOA). *See* 28 U.S.C.A. 1738B (Supp. 1999). When dealing with multiple child support orders, FFCCSOA provides guidelines for determining which order will be recognized for purposes of continuing, exclusive jurisdiction, stating in pertinent part:

> (3) If 2 or more courts have issued child support orders for the same obligor and child, and more than 1 of the courts would have continuing, exclusive jurisdiction under this section, an order issued by a court in the current home State of the child must be recognized, but if an order has not been issued in the current home State of the child, the order most recently issued must be recognized.

28 U.S.C.A. § 1738B(f). In the case at bar, the 1981 California order was issued in the home state of the children. All child support payments made by defendant were sent to plaintiff in California, where she had custody of the children. Accordingly, FFCCSOA mandates that the California order be recognized for purposes of continuing, exclusive jurisdiction.

However, FFCCSOA became effective in 1994 and subsequently was amended. We must therefore determine whether FFCCSOA

**TWADDELL v. ANDERSON**

[136 N.C. App. 56 (1999)]

applies retroactively to arrearages that accrued prior to the Act's effective date. Because this is an issue of first impression in North Carolina, we again begin our analysis with a survey of other jurisdictions.

The Georgia Court of Appeals addressed this issue in *Georgia Dept. of Human Resources v. Deason*, 520 S.E.2d 712 (Ga. Ct. App. 1999). That court stated:

[T]he legislative history does not expressly state the intent of Congress regarding retroactivity. The language and purpose of both the Act and the legislative history are that of remedial legislation, looking toward retroactive application to assist in the collection of past arrearages. Thus, the problem will continue into the future, and the purpose of the Act would be frustrated unless it is applied retroactively, which would require that congressional intent be inferred through construction to imply retroactivity.

. . . "[W]here retroactivity is concerned, we believe that the Supreme Court has directed us to infer congressional intent from an accumulation of clues in the language and legislative history of the statutes." "It is well settled that legislation that is interpretive, procedural, or remedial must be applied retroactively, while substantive amendments are given only prospective application. 'Substantive acts are generally defined as those which create, confer, define, or destroy rights, liabilities, causes of action, or legal duties. Procedural acts describe methods for enforcing, processing, administering, or determining rights, liabilities, or status.' "

Under [*Bradley v. Richmond School Board*, 416 U.S. 696, 40 L. Ed. 2d 476 (1974)], there are three factors to determine on review if there is manifest injustice present: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights."

In this case, the statute imposes no new obligation, because the obligation of support arises at the birth of the minor child. The statute merely reinforces an existing obligation of child support. It deals with remedial matters of great congressional concern, i.e., the inability to enforce interstate child support orders, resulting in arrearages. Finally, the obligor is not deprived of a right that has matured or become unconditional, because . . . the preexisting obligation remains the same. Thus, under *Bradley*,

TWADDELL v. ANDERSON

[136 N.C. App. 56 (1999)]

the obligor suffers no manifest injustice when the Act is applied retroactively.

*Id.* at 719-20 (internal citations omitted). Numerous other jurisdictions have reached the same conclusion and applied FFCCSOA retroactively. *See, e.g., In re Marriage of Yuro,* 968 P.2d 1053 (Ariz. Ct. App. 1998); *In re Marriage of Lurie,* 39 Cal. Rptr. 2d 835 (Cal. Ct. App. 1995); *Peterson v. Israel,* No. FA 97 07 16665, 1998 WL 457919, at *1 (Conn. Super. Ct. July 22, 1998); *DCSE/Jennings v. DeBussy,* 707 A.2d 44 (Del. Fam. Ct. 1997); *Day v. Child Support Enforcement Div.,* 900 P.2d 296 (Mont. 1995); *Isabel M. v. Thomas M.,* 624 N.Y.S.2d 356 (N.Y. Fam. Ct. 1995). *But see Lorenzo,* 738 So. 2d 967; *Lewis v. Lewis,* No. 96APF07-868, 1997 WL 128566, at *1 (Ohio Ct. App. Mar. 18, 1997).

North Carolina courts have considered the impact of a statute in determining whether it is to have retroactive application. Ordinarily, statutes are presumed to act prospectively only, unless it is clear that the legislature intended that the law be applied retroactively. *See Gardner v. Gardner,* 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980). "The application of a statute is deemed 'retroactive' or 'retrospective' when its operative effect is to alter the legal consequences of conduct or transactions completed prior to its enactment." *Id.* We agree with the Georgia Court of Appeals that FFCCSOA is remedial and that the legislature intended its application to be retroactive. We further observe that defendant had an ongoing duty to provide for his children throughout their minority. We therefore hold that FFCCSOA is to be applied retroactively in North Carolina and that arrearages that have accrued under the California order are enforceable. Accordingly, the trial court's conclusion that North Carolina had sole jurisdiction over the case violated FFCCSOA and was error.

IV.

[4] We next address plaintiff's contention that the trial court erred in failing to grant full faith and credit to the 1997 California order. A judgment rendered by a court of one state binds the courts of another state as to the merits adjudicated. *See* U.S. Const. art. IV, § 1. Therefore, this Court is "bound to recognize and enforce a valid judgment rendered by a sister state." *Pieper v. Pieper,* 108 N.C. App. 722, 725, 425 S.E.2d 435, 436 (1993). In *Silvering,* 107 N.C. App. 270, 419 S.E.2d 360, we discussed whether a Florida URESA judgment, which calculated arrearages that had accrued under a California support order, was subject to full faith and credit by North Carolina courts.

**TWADDELL v. ANDERSON**

[136 N.C. App. 56 (1999)]

In *Fleming v. Fleming*, 49 N.C. App. 345, 271 S.E.2d 584 (1980), where the plaintiff moved to North Carolina and registered an Arizona judgment for arrearages, this Court held that "a final judgment [is] entitled to full faith and credit [citation omitted] and is conclusive on the amount owed by defendant[.]" *Id.* at 350, 271 S.E.2d at 587. The *Fleming* Court also opined that "[u]nder the full faith and credit clause of the Constitution of the United States, a judgment rendered by the court of one State is, in the courts of another State of the Union, binding and conclusive as to the merits adjudicated. It is improper to permit an alteration or re-examination of the judgment, or of the grounds on which it is based." *Id.*

*Id.* at 274-75, 419 S.E.2d at 363 (alterations in original). We therefore concluded: "Here, the arrearages due under the California order of support were reduced to judgment in Florida. Accordingly, the judgment entered by the State of Florida is entitled to full faith and credit . . . ." *Id.* at 275, 419 S.E.2d at 364.

Based on our holding in *Silvering*, we hold that, nothing else appearing, the California order is entitled to full faith and credit in the courts of North Carolina. However, the full faith and credit provision is subject to limited exceptions. A foreign judgment may be attacked collaterally upon the following grounds: "(1) lack of jurisdiction; (2) fraud in procurement; or (3) that it is against public policy." *McGinnis v. McGinnis*, 44 N.C. App. 381, 388, 261 S.E.2d 491, 496 (1980) (citation omitted). Defendant claims that the 1997 California order was entered without personal jurisdiction over him. Therefore, we must determine whether the law of California provides for personal jurisdiction over an out-of-state resident.

Cal. Family Code § 4905 (West 1999) provides in pertinent part:

In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if any of the following apply:

. . . .

(3) The individual resided with the child in this state.

(4) The individual resided in this state and provided prenatal expenses or support for the child.

**TWADDELL v. ANDERSON**

[136 N.C. App. 56 (1999)]

This statute permits a California tribunal to obtain personal jurisdiction over a nonresident defendant in an action to determine arrearages based on a prior California support order. Although this is an issue of first impression in North Carolina, we note that a similar result was reached in *Child Support Enforcement v. Brenckle*, 675 N.E.2d 390 (Mass. 1997) (holding that Alaska had personal jurisdiction over nonresident defendant under UIFSA to issue judgment setting amount of arrears because child was resident of Alaska and defendant had resided with child in Alaska).

Defendant claims that he was denied such due process rights as adequate notice that the action was before the California court in 1997. However, there is no evidence of record that this issue was raised before the trial court. In defendant's Petition to Vacate Registration, he contended only that "the attempt to register the Decree from the state of California is in contravention of the Uniform Interstate Family Support Act." In its order vacating the petition, the only findings made by the trial court pertaining to personal jurisdiction are the following:

2. The attempt to register the decree from the state of California fails to conform with the Uniform Interstate Family Support Act.

. . . .

8. George Anderson has no contact whatsoever with the state of California. He is not a resident there and does not have any contacts whatsoever with the state of California.

There is nothing in the trial court's findings regarding any of the other claims that defendant now makes on appeal. This Court can only consider the pleadings and filings before the trial court; the parties cannot raise new issues or theories for the first time on appeal. *See Holterman v. Holterman*, 127 N.C. App. 109, 112, 488 S.E.2d 265, 267 (1997); N.C. R. App. P. 10(b)(1). Defendant's argument is without merit.

Because the California court had personal jurisdiction over defendant and none of the exceptions allowing collateral attack on the California order applied in this instance, we hold that the California order is entitled to full faith and credit in the courts of North Carolina.

## V.

**[5]** Plaintiff next contends the trial court erred in concluding the statute of limitations precluded the enforcement of the arrears as stated in the 1997 California order. We addressed a similar issue in *Silvering*, 107 N.C. App. 270, 419 S.E.2d 360. The *Silvering* case stated with regard to the issue of the statute of limitations for arrearages:

> [T]he prescribed period for the commencement of actions "[u]pon a judgment or decree of any court of the United States, or of any state or territory thereof, from the date of its rendition," is ten years. In the case *sub judice*, the application of this statute does not prevent recovery of the full amount entered by the trial court. Enforcement of periodic sums of support arrearages due under a support order which became due more than ten years before the institution of an action for judicial determination of the amount due are barred by the ten year statute of limitations. *Lindsey v. Lindsey*, 34 N.C. App. 201, 203, 237 S.E.2d 561, 563 (1977). *Once the amount of arrearages is reduced to judgment, however, as occurred when the Florida court entered its order, that judgment is entitled to full enforcement in North Carolina for a period of ten years after its entry. Arrington v. Arrington*, 127 N.C. 190, 197, 37 S.E. 212, 214 (1900).

*Id.* at 275, 419 S.E.2d at 363 (second alteration in original) (emphasis added); *see also Pieper*, 108 N.C. App. at 728, 425 S.E.2d at 438 ("Having reduced the amount of arrearage to valid judgment, absent any applicable exceptions, we are bound to apply the Full Faith and Credit Clause and provide full enforcement of the judgment in North Carolina.").

Pursuant to *Silvering* and *Pieper*, we hold that the trial court erred in concluding that the statute of limitations precluded enforcement of the 1997 California order.

## VI.

**[6]** Finally, plaintiff contends the trial court erred in finding plaintiff's actions in attempting to register the 1997 California order subject to sanctions pursuant to N.C. Gen. Stat. § 1A-1, Rule 11 (1990). Rule 11(a) of the North Carolina Rules of Civil Procedure states in pertinent part:

**TWADDELL v. ANDERSON**

[136 N.C. App. 56 (1999)]

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose . . . .

*Id.* Recognizing the adverse impact of sanctions under this Rule, our appellate courts have encouraged trial judges to act under Rule 11 only after careful consideration.

> Rule 11 should "not have the effect of chilling creative advocacy," *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989), and therefore, in determining compliance with Rule 11, "courts should avoid hindsight and resolve all doubts in favor of the signer." *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469-70 (2d Cir. 1988), *rev'd in part on other grounds*, 493 U.S. 120, 110 S. Ct. 456, 107 L. Ed. 2d 438 (1989).

*Bryson v. Sullivan*, 102 N.C. App. 1, 8, 401 S.E.2d 645, 651, *rev'd on other grounds*, 330 N.C. 644, 412 S.E.2d 327 (1992).

The applicable standard for review of the granting or denial of sanctions under Rule 11 is as follows:

> The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).

*Turner v. Duke University*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989).

In the case at bar, we have held that plaintiff had grounds for seeking to register the California order. Therefore, counsel for plaintiff did not violate Rule 11.

We note in conclusion that this case demonstrates the need for, and value of, UIFSA. The tension between the North Carolina courts and California courts, both acting under URESA, is palpable from the record. Numerous experienced trial judges have dealt with this case, and the evident exasperation of the trial court, which had the unenviable duty of sorting out the conflicting claims, is understandable. However, when facts that have evolved over a period of time are superimposed upon an unsettled area of the law, as has happened in the case at bar, resolution of disputed issues is far from obvious. Understanding that we speak with the great advantage of hindsight, we reemphasize the salient language quoted above from *Bryson* and again encourage the trial courts to impose sanctions only with caution in the face of conditions such as are presented in this case.

Reversed.

Judges WYNN and HORTON concur.