WILSON COUNTY ON BEHALF OF LYN W. EGBERT, PLAINTIFF V.
JAMES D. EGBERT, DEFENDANT

No. COA01-1334

(Filed 1 October 2002)

**Child Support, Custody, and Visitation— modification—Full Faith and Credit for Child Support Orders Act**

The trial court did not err by holding that a Florida court's purported modification of a North Carolina child support order did not operate as a modification of the North Carolina order, because: (1) North Carolina had exclusive jurisdiction over the parties by virtue of the first child support order in 1989 and by virtue of the residence and domicile of the custodian and children; (2) neither the record nor defendant's brief allege or indicate that written notice of consent was filed in North Carolina before or after the Florida modification in 1992 as required by U.S.C. § 1738B(e)(2)(b); (3) even if Florida had jurisdiction to enter an order, the Full Faith and Credit for Child Support Orders Act (FFCCSOA) requires the Court of Appeals to give the North Carolina child support order priority since the home state of the children is North Carolina; and (4) FFCCSOA can be applied retroactively since it imposes no new obligations and merely reinforces an existing obligation of child support.

Appeal by defendant from order entered 25 July 2001 by Judge William G. Stewart in District Court, Wilson County. Heard in the Court of Appeals 21 August 2002.

*Beaman and King, P.A., by Charlene Boykin King, for plaintiff-appellee Wilson County o/b/o Lyn W. Egbert.*

*W. Michael Spivey, for the defendant-appellant James David Egbert.*

WYNN, Judge.

James David Egbert appeals from an order upholding his obligation to pay child support to Lyn W. Egbert under a North Carolina court order notwithstanding contrary Florida court orders. On appeal, he presents one fundamental issue: Did 1992 and 1997 Florida child support orders modify and discharge his obligations under a 1989 North Carolina child support order? We answer, no, and summarize our holding today as follows: Interstate child support orders are governed by the Full Faith and Credit for Child Support Orders Act ("FFCCSOA"). 28 U.S.C. § 1738B. The FFCCSOA, enacted to reconcile multiple and inconsistent child support orders entered by different state courts under the Uniform Reciprocal Enforcement of Support Act ("URESA"), provides that:

> If 2 or more courts have issued child support orders for the same obligor and child, and more than 1 of the courts would have continuing, exclusive jurisdiction under this section, an order issued by a court in the current home State of the child must be recognized . . . .

*Id.* at § 1738B(3). Here, one child support order was entered by North Carolina in 1989, and two child support orders were entered by Florida in 1992 and 1997 respectively. However, North Carolina is the home state of the children who are the subjects of the child support order. Mr. Egbert made every child support payment to Ms. Egbert in North Carolina, where Ms. Egbert maintained continuous custody of the children. In accordance with the Supremacy Clause of the United States Constitution, FFCCSOA mandates this Court to recognize the North Carolina order as the controlling law in this case. Therefore, we affirm the judgment of the District Court.

The underlying facts to this matter show that on 27 December 1989, an order was entered in District Court, Wilson County, North Carolina requiring Mr. Egbert to pay $520.00 per month in child support. Subsequently, Mr. Egbert moved to the State of Florida. On 1 April 1991, the North Carolina order was registered in Hernando County, Florida pursuant to URESA. On 23 November 1992, the

**WILSON CTY. EX REL. EGBERT v. EGBERT**

[153 N.C. App. 283 (2002)]

Circuit Court in Hernando County, Florida entered an order reducing the child support from $520 to $284.20 per month.

Over the next five years, the Florida order had the effect of reducing Mr. Egbert's child support obligation by $14,901.43. The order also recited that in 1992, Mr. Egbert owed child support arrears in the amount of $14,055.39. Mr. Egbert was ordered to pay his arrearage at the rate of $56.84 per month. On 26 August 1997, the Circuit Court, Hernando County, entered an order dismissing the registered child support and arrears action under URESA, because Mr. Egbert had completed his financial obligations under the Florida order of 23 November 1992.

On 23 April 2001, the North Carolina District Court entered a judgment against Mr. Egbert, finding Mr. Egbert had accumulated a $14,901.43 arrearage by virtue of Mr. Egbert's failure to pay $520 per month to Ms. Egbert, pursuant to the 1989 North Carolina child support order. On 8 June 2001, Mr. Egbert filed a Rule 60(b) Motion requesting the District Court to vacate and set aside the judgment. At the hearing, Mr. Egbert stipulated that the amount of arrearage owed to Ms. Egbert was not in dispute. Although Mr. Egbert agreed that he validly owed $14,901.43 in arrearage pursuant to the North Carolina child support order, Mr. Egbert argued that this amount should be dismissed, in its entirety, because the URESA action was dismissed in Florida on 26 August 1997.

On 19 July 2001, the District Court in Wilson County, North Carolina denied Mr. Egbert's Rule 60(b) Motion. The District Court held that the Florida court's modification of the 1989 North Carolina order was ineffective, and therefore, Mr. Egbert owed $520 per month from January 1, 1990 forward. Mr. Egbert contends that the District Court erred by holding that the Florida court's modification of a North Carolina child support order did not operate as a modification of the North Carolina order.

Interstate child support orders are governed by FFCCSOA. 28 U.S.C. § 1738B. Congress passed FFCCSOA because multiple and inconsistent child support orders, under statutory schemes like URESA, were contributing to: (1) excessive relitigation over existing orders; (2) a disregard of state child support orders "resulting in massive arrearages nationwide"; and (3) an epidemic of non-custodial parents failing to pay regularly scheduled child support for "extensive periods of time, resulting in substantial hardship for the children" and

their custodians. FFCCSOA, Pub. L. No. 103-383(2)(a), 108 Stat. 4063 (codified as amended at 28 U.S.C. § 1738B (1994)). In response to these concerns, Congress passed FFCCSOA for the purpose of establishing "national standards" to facilitate the payment of child support, discourage interstate conflict over inconsistent orders, and to avoid jurisdictional competition. *Id.*, Pub. L. No. 103-383(2)(b), 108 Stat. 4063 (codified as amended at 28 U.S.C. § 1738B (1994)).

The FFCCSOA is a federal law, and therefore, preempts any contrary or inconsistent state law under the Supremacy Clause of the United States Constitution.[1] U.S. Const. art. VI, cl. 2; *see Kelly v. Otte*, 123 N.C. App. 585, 589, 474 S.E.2d 131, 134 (1996), *disc. review denied*, 345 N.C. 180, 479 S.E.2d 204 (1996). Moreover, in *Twaddell v. Anderson*, this Court held that FFCCSOA applies retroactively because: (1) the statute is primarily procedural in nature; (2) retroactive application does not result in manifest injustice; and (3) a failure to apply the statute retroactively would frustrate the essential purpose of the Act. *Twaddell v. Anderson*, 136 N.C. App. 56, 66, 523 S.E.2d 710, 717 (1999). Accordingly, we will apply FFCCSOA retroactively to the facts of this case.

Under FFCCSOA, once a state enters a child support order, that state retains "continuing, exclusive jurisdiction over the order if the State is the child's state or the residence of any individual contestant unless the court of another State, acting in accordance with subsections (e) and (f), has made a modification of the order." 28 U.S.C. § 1738B(d).

---

1. Mr. Egbert argues that URESA, rather than FFCCSOA, should apply. If URESA is applied, Mr. Egbert contends, the North Carolina order was properly modified by the Florida Circuit Court. To support this proposition, Mr. Egbert points to URESA's "anti-nullification clause" which provides that:

> A support order made by a [North Carolina court]. . . is not nullified by a support order made by a . . . court of any other state . . . unless otherwise specifically modified by the court.

N.C. Gen. Stat. § 52A-21 (repealed 1996). Mr. Egbert argues that Florida specifically modified the North Carolina order by altering Mr. Egbert's child support obligation, and by the Florida court's conclusion that: "All other issues addressed in the parties' Judgment entered in . . . North Carolina . . . not modified herein shall remain in full force and effect." Although Mr. Egbert may be correct in his application and interpretation of URESA, URESA is not the controlling law. Congress enacted FFCCSOA precisely to address conflicting and inconsistent support orders. Before the enactment of FFCCSOA, URESA, and similar statutes, provided little guidance to courts regarding the resolution of inconsistent child support orders. FFCCSOA is a procedural and remedial statute, which provides courts with specific instructions regarding the priority to give multiple and successive child support orders.

**WILSON CTY. EX REL. EGBERT v. EGBERT**

[153 N.C. App. 283 (2002)]

Under subsection (e), a State can modify an existing support order from another state if "each individual contestant has filed written consent with the State of continuing, exclusive jurisdiction for a court of another State to modify the order and assume continuing exclusive jurisdiction over the order." 28 U.S.C. § 1738B(e)(2)(b); *see also Hinton v. Hinton*, 128 N.C. App. 637, 639, 496 S.E.2d 409, 411 (1998).

Here, Mr. Egbert argues that Ms. Egbert consented to the Florida modification, and therefore, either FFCCSOA should not apply or Ms. Egbert should be estopped from asserting that the North Carolina order was not properly modified. We disagree.

Section 1738B(e)(2)(b) requires the parties to file written notice of the consent to change jurisdiction with the state currently having exclusive jurisdiction. In this case, North Carolina had exclusive jurisdiction over the parties by virtue of the first child support order in 1989, and by virtue of the residence and domicile of the custodian and children. Neither the record nor Mr. Egbert's brief allege or indicate that written notice of consent was filed in North Carolina before or after the Florida modification in 1992. Thus, the record shows that the Florida court's modification was not done in accordance with subsection (e).

Moreover, even assuming that Florida had jurisdiction to modify the North Carolina order, under subsection (f), if one or more child support orders have been entered by different state courts, and each court has exclusive jurisdiction, FFCCSOA mandates a reviewing court to apply the following rule in determining which order has priority:

If 2 or more courts have issued child support orders for the same obligor and child, and more than 1 of the courts would have continuing, exclusive jurisdiction under this section, an order issued by a court in the current home State of the child must be recognized . . . .

28 U.S.C. § 1738B(f)(3).

Here, the home state of the children is North Carolina. Therefore, even if Florida had jurisdiction to enter an order, FFCCSOA requires this Court to give the North Carolina child support order priority.

Next, Mr. Egbert contends that even if FFCCSOA is applicable, FFCCSOA should not be retroactively applied because its application

would result in manifest injustice to Mr. Egbert. In support of this proposition, Mr. Egbert relies on this Court's reasoning in *Twaddell* providing that "legislation that is interpretive, procedural, or remedial must be applied retroactively, while substantive amendments are given only prospective application." *Twaddell*, 136 N.C. App. at 65, 523 S.E.2d at 717. Mr. Egbert is correct in noting that a statute may not be applied retroactively that abridges substantive rights. *Garner v. Garner*, 300 N.C. 715, 718, 268 S.E.2d 468, 471 (1980). However, as this Court held in *Twaddell*,

> the [FFCCSOA] imposes no new obligation, because the obligation of support arises at the birth of the minor child. The statute merely reinforces an existing obligation of child support. It deals with remedial matters of great Congressional concern, i.e., the inability to enforce interstate child support orders, resulting in arrearages. Finally, the obligor is not deprived of a right that has matured or become unconditional, because the preexisting obligation remains the same.

*Twaddell*, 136 N.C. App. at 65, 523 S.E.2d at 717.

In fact, Mr. Egbert conceded this proposition in his Rule 60(b) Motion hearing on 19 July 2001. In that hearing, the District Court noted, in paragraph 6, that Mr. Egbert stipulated that there was "no dispute that the order entered by Judge Evans set forth the correct amount [of arrearage] considering the terms of the original North Carolina order . . . ."[2] Accordingly, application of FFCCSOA does not impose any new obligations upon Mr. Egbert or result in manifest injustice, rather application of FFCCSOA "merely reinforces an existing obligation of child support." *Twaddell*, 136 N.C. App. at 65, 523 S.E.2d at 717.

Affirmed.

Judges HUDSON and CAMPBELL concur.

---

2. Mr. Egbert asks this Court to reconsider our finding in *Twaddell* that FFCCSOA applies retroactively. However, the North Carolina Supreme Court has consistently held that: "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Therefore, this Court does not have the authority to overrule *Twaddell*.