NEW HANOVER COUNTY, ON BEHALF OF SHERRI M. MANNTHEY, PLAINTIFF V.
BRAD W. KILBOURNE, DEFENDANT

No. COA01-1521

(Filed 15 April 2003)

**Child Support, Custody, and Visitation— support—Oregon and North Carolina orders—arreages**

A child support case was remanded for a determination of what amount, if any, was owed where an initial order was obtained in Oregon in 1989, another in North Carolina in 1992, this 2001 motion in the cause sought arrears from the Oregon order after the children had "aged out," and the trial court found the North Carolina order to be controlling. The trial court's duty was to enforce defendant's obligation to pay vested arrears accrued under the Oregon order up to the date of the North Carolina order; from that point, defendant owed any arrears that vested under both orders, but is due a credit for payments made under either order. N.C.G.S. §§ 50-13.10, 52C-2-209.

Appeal by plaintiff from order entered 13 July 2001 by Judge J.H. Corpening, II in New Hanover County District Court. Heard in the Court of Appeals 7 January 2003.

*Johnson & Lambeth, by Maynard M. Brown, Anna J. Averitt, and Carter T. Lambeth, for plaintiff-appellant.*

*Brad Kilbourne, pro se.*

**NEW HANOVER CTY. EX REL. MANNTHEY v. KILBOURNE**

[157 N.C. App. 239 (2003)]

GEER, Judge.

Plaintiff, Sherri M. Mannthey, appeals from an order denying her request that a 1989 Oregon child support order be found controlling over a 1992 North Carolina child support order. The trial court concluded that "[t]he North Carolina order of September 1992 is the controlling order in this matter." Because the record reveals that the only issue before the trial court was arrearages, we hold that the trial court erred in failing to give full faith and credit to the 1989 Oregon child support order in violation of the United States Constitution and, therefore, reverse.

Ms. Mannthey and Brad Kilbourne were married in January 1982. They are the parents of Jamie M. Kilbourne, born 10 September 1982. During the marriage, the family resided in Oregon. The parties divorced in February 1987. On 3 November 1989, the Oregon courts entered a child support order (the "Oregon order"), requiring defendant to pay $175.00 per month, beginning in December 1989 and continuing until the child reached age 18 (unless the child married or was emancipated) or until age 21 if the child was regularly attending school. After entry of the Oregon order, defendant moved to North Carolina.

In March 1992, pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA"), the Oregon courts sent the North Carolina courts a Uniform Support Petition requesting the establishment of a URESA order for child support and medical coverage. Oregon's URESA petition failed to request arrears, although defendant allegedly owed Oregon $5,958.00 in arrears pursuant to the Oregon order because of public assistance provided to plaintiff. On 22 September 1992, a North Carolina court entered a new child support order (the "North Carolina order") in which the court applied the North Carolina Child Support Guidelines. Mr. Kilbourne consented to the order and judgment, which required·defendant to pay $54.00 per week in child support beginning October 1992. Defendant followed the North Carolina order in making child support payments until 2001.

In 2001, Oregon requested that North Carolina register the original 1989 Oregon order under the Uniform Interstate Family Support Act ("UIFSA"). On 6 April 2001, the New Hanover Child Support Agency filed a URESA/UIFSA motion in the cause in New Hanover County requesting that the court:

1. Determine the Oregon order to be the controlling order pursuant to NCGS 52C-2-207(b)(2).

2. Confirm registration of the November 7, 1989 Oregon order in the state of North Carolina.

3. Dismiss the North Carolina Order and Judgment.

On 16 April 2001 North Carolina entered a notice of registration of foreign support order, which registered the Oregon order in North Carolina. After an 11 July 2001 hearing on plaintiff's motion in the cause, the trial court denied plaintiff's requests and found the North Carolina order to be controlling.

On appeal, plaintiff argues that the application of N.C. Gen. Stat. § 52C-2-207(b) and *State ex rel. Harnes v. Lawrence*, 140 N.C. App. 707, 538 S.E.2d 223 (2000) render the Oregon order controlling and, therefore, enforceable under UIFSA. While we agree with plaintiff that the trial court's ruling was in error, because of the particular facts of this case, we do not reach the question of which order controls.

I

Because of the complexity and multiplicity of pertinent state and federal child support legislation, a summary of the law regarding review of multi-state child support orders is critical in order to define the proper analytical framework for cases such as this one.

From 1951 until 1996, URESA provided the procedural mechanism in North Carolina for establishing, modifying, and enforcing child support across state lines. Under URESA, a state was not bound to adopt a child support order entered in another state. Instead, "a state had jurisdiction to establish, vacate, or modify an obligor's support obligation even when that obligation had been created in another jurisdiction." *Welsher v. Rager*, 127 N.C. App. 521, 524, 491 S.E.2d 661, 663 (1997). As a result, child support obligors could have multiple, inconsistent obligations in different states. As this Court noted, this aspect of URESA meant that "obligors could avoid their responsibility by moving to another jurisdiction and having their support obligations modified or even vacated." *Id.*

In 1986, in an effort to improve the collection of child support, Congress amended Title IV-D of the Social Security Act ("the Bradley amendment"). 42 U.S.C. 666(a)(9) (2003); *see also* Lisa Dukelow,

*Child Support in North Carolina: What is the State of the Law and How Did We Get Here?*, 22 N.C. Cent. L.J. 14, 18 (1996). The Bradley amendment's intent was to "concentrate on the collection of child support rather than on the amount of child support to be awarded." *Id.* As one commentator has noted, the amendment "required states to enact laws providing that unpaid, court-ordered child support constituted a vested right when due, prohibiting the retroactive modification of vested child support arrearages, considering past-due child support as a final judgment, and extending full faith and credit with respect to the enforceability of judgments for past-due child support." John L. Saxon, *"Reconciling" Multiple Child Support Orders Under UIFSA and FFCCSOA: The Twaddell, Roberts, and Dunn Cases*, Family Law Bulletin No. 11 (Institute of Government, The University of North Carolina at Chapel Hill), June 2000, at 20 n.68 (hereinafter *"Reconciling"*); *see also* 42 U.S.C. 666(a)(9) (2003).

To comply with the Bradley amendment, North Carolina enacted N.C. Gen. Stat. § 50-13.10 in 1987, which provided:

(a) Each past due child support payment is *vested* when it accrues and *may not thereafter be vacated, reduced, or otherwise modified* in any way for any reason, in this State or any other state, except that a child support obligation may be modified as otherwise provided by law . . . .

(b) A past due child support payment which is vested pursuant to G.S. 50-13.10(a) *is entitled, as a judgment, to full faith and credit* in this State and any other state, with the full force, effect, and attributes of a judgment of this State, except that no arrearage shall be entered on the judgment docket of the clerk of superior court or become a lien on real estate, nor shall execution issue thereon, except as provided in G.S. 50-13.4(f)(8) and (10).

N.C. Gen. Stat. § 50-13.10(a) and (b) (2001) (emphasis added). Under § 50-13.10, past due child support is vested in the obligee, is not subject to retroactive modification, and is entitled to full faith and credit by sister states.

In a further effort to address interstate child support issues, Congress enacted the Full Faith and Credit for Child Support Orders Act ("FFCCSOA") in 1994. While the Bradley amendment addressed arrearages, FFCCSOA addressed the proliferation of inconsistent child support orders being filed across the country. *Wilson Cty. ex rel. Egbert v. Egbert*, 153 N.C. App. 283, 286, 569 S.E.2d 727, 729

NEW HANOVER CTY. ex rel. MANNTHEY v. KILBOURNE

[157 N.C. App. 239 (2003)]

(2002) ("Congress passed FFCCSOA for the purpose of establishing 'national standards' to facilitate the payment of child support, discourage interstate conflict over inconsistent orders, and to avoid jurisdictional competition."). According to one scholar, FFCCSOA was significant because prior to its enactment, "states were required to give full faith and credit to out-of-state child support orders only to the extent that child support payments under another state's order were past-due arrearages that were vested and not subject to retroactive modification under the rendering state's law." John L. Saxon, *The Federal "Full Faith and Credit for Child Support Orders Act,"* Family Law Bulletin No. 5 (Institute of Government, The University of North Carolina at Chapel Hill), Feb. 1995, at 1.

FFCCSOA, codified at 28 U.S.C. § 1738B, requires "that state courts afford 'full faith and credit' to child support orders issued in other states and refrain from modifying or issuing contrary orders except in limited circumstances." *Lawrence,* 140 N.C. App. at 710, 538 S.E.2d at 225. Under § 1738B(e), a child support order may be modified by a sister state only if the rendering state has lost continued, exclusive jurisdiction over the child support order, which in turn occurs only if (1) neither the child nor any of the parties continue to reside in the state; or (2) each of the parties has consented to the assumption of jurisdiction by another state. 28 U.S.C. § 1738B(e)(2) (2003); *Lawrence,* 140 N.C. App. at 710, 538 S.E.2d at 226. Under the Supremacy Clause of the United States Constitution, FFCCSOA is binding on all states "and supersede[s] any inconsistent provisions of state law, including any inconsistent provisions of uniform state laws such as URESA . . . ." *Kelly v. Otte,* 123 N.C. App. 585, 589, 474 S.E.2d 131, 134 (1996). Thus, to the extent URESA conflicted with FFCCSOA, FFCCSOA was binding on North Carolina prior to North Carolina's adoption of UIFSA in 1996.

UIFSA—the Uniform Interstate Family Support Act—was promulgated in 1992 by the National Conference of Commissioners on Uniform State Laws. North Carolina's adoption of UIFSA, codified in Chapter 52C of the North Carolina General Statutes and replacing URESA, did not become effective, however, until 1 January 1996. Enacted by states as a mechanism to reduce the multiple, conflicting child support orders existing in numerous states, UIFSA creates a structure designed to provide for only one controlling support order at a time: "UIFSA establishes a one order system whereby all states adopting UIFSA are required to recognize and enforce the same obligation consistently." *Welsher,* 127 N.C. App. at 525, 491 S.E.2d at 663;

*see also* John L. Saxon and Jacqueline M. Kane, *The Uniform Interstate Family Support Act,* Family Law Bulletin No. 8 (Institute of Government, The University of North Carolina at Chapel Hill), March 1996, at 3. Under UIFSA, "[u]pon filing, a [foreign] support order becomes registered in North Carolina and, unless successfully contested, must be recognized and enforced." *Welsher,* 127 N.C. App. at 525, 491 S.E.2d at 663. The registered order may not be vacated or modified unless (1) both parties consent or (2) the child, the obligor, and the obligee have all permanently left the issuing state and the registering state has personal jurisdiction over all of them. *Id.*

Although FFCCSOA had become effective in 1994, the statute—in contrast to UIFSA—originally did not include any provisions for reconciling multiple child support orders when both states had continuing exclusive jurisdiction. Congress, therefore, amended FFCCSOA in 1996 so that it mirrored UIFSA. After the 1996 amendment, FFCCSOA was identical to UIFSA with both acts strictly prohibiting modification of a sister state's prior, valid order. Today, UIFSA and FFCCSOA together:

> prohibit a court from entering (and, except under certain limited circumstances, prohibit a court's modification of) a child support order if a sister state's court has already entered a support order involving the same parent and child and the other court's order is, or may be determined to be, the one controlling support order with respect to the parent's duty to support that child or family.

Saxon, *"Reconciling,"* at 3.

II

Because of the prevalence of older child support orders, such as those in this case, a court reviewing multiple child support orders must consider the applicability of each of the above pieces of legislation. If the court is confronted with orders originally entered or registered in North Carolina pursuant to URESA (in other words, prior to 1 January 1996), then the court must turn to URESA to determine the validity of each order. Although superseded by UIFSA, URESA is still applicable to determine the validity of an order originally entered when URESA was in effect and before UIFSA's and FFCCSOA's one-order rules were effective. *Twaddell v. Anderson,* 136 N.C. App. 56, 62, 523 S.E.2d 710, 715 (1999), *disc. review denied,* 351 N.C. 480, 543 S.E.2d 510 (2000) (the effect of a subsequent North Carolina URESA

order on a prior California order registered "shall be determined in accordance with URESA.").

Under URESA, a subsequent support order "does not necessarily nullify a prior order." *Id.* Thus, as indicated above, a case may involve more than one valid child support order even though the orders may be inconsistent in their terms. *Id.* at 63, 523 S.E.2d at 715. This Court has previously determined that a subsequent URESA order nullifies a prior order only if it specifically so provides. *Id. See also* N.C. Gen. Stat. § 52A-21 (1992) (repealed 1996) (a support order of this State does not nullify a support order by a court of any other state "unless otherwise specifically provided by the court").

Once the court has determined how many valid URESA orders exist, it must focus on the relief sought by the plaintiff. If the plaintiff is seeking only payment of arrearages because there is no prospective child support obligation (as when the child has "aged out"), then the court need not consider which of the valid URESA orders is controlling. Instead, the Bradley amendment and N.C. Gen. Stat. § 50-13.10 apply.

The court must first determine what arrearages have vested. Under N.C. Gen. Stat. § 50-13.10(a), child support payments due under a North Carolina child support order are vested when they accrue. With respect to valid child support orders from other states, the court must determine whether that state has enacted legislation pursuant to the Bradley amendment or whether the state has otherwise provided that the past-due child support amounts are vested. If so, the court must give full faith and credit to the other state's order and enforce the past-due support obligation. *See Twaddell,* 136 N.C. App. at 66-67, 523 S.E.2d at 718 (the full faith and credit clause of U.S. Const. art. IV, § 1 applies to require North Carolina courts to enforce arrearages arising out of a second state's child support order); *Fleming v. Fleming,* 49 N.C. App. 345, 349-50, 271 S.E.2d 587, 584 (1980) ("[a] decree for the future payment of . . . child support is, as to installments past due and unpaid, within the protection of the full faith and credit clause of the Constitution unless by the law of the state in which the decree was rendered" the amounts are not considered vested).

We note one caveat: if properly raised, a defendant may be entitled to raise the statute of limitations as a defense. *See, e.g., Twaddell,* 136 N.C. App. at 69, 523 S.E.2d at 719 (concluding that once the amount of arrearages was reduced to judgment, that judgment

was entitled to full enforcement in North Carolina for a period of ten years after its entry); *Fitch v. Fitch*, 115 N.C. App. 722, 724, 446 S.E.2d 138, 140 (1994) (past due child support payments which became due more than ten years prior to the filing of a motion in the cause would be barred by the statute of limitations). The trial court must apply whichever statute of limitations is longer as between North Carolina and the second state. 28 U.S.C. § 1738B(h)(3) (2003); *see also Kelly*, 123 N.C. App. at 589, 474 S.E.2d at 134 ("section 1738B(g)(3) requires that the longer of the forum state's statute of limitation and the rendering state's statute of limitation be applied").

If the case involves, in full or in part, the question of prospective payment of child support, then the court must apply UIFSA and FFCCSOA to the URESA orders for the purpose of reconciling the orders and determining which one order will control the obligor's prospective obligation. North Carolina's UIFSA, found at N.C. Gen. Stat. § 52C-2-207(b)(2), provides:

> (b) If a proceeding is brought under this Chapter, and two or more child support orders have been issued by tribunals of this State or another state with regard to the same obligor and child, a tribunal of this State shall apply the following rules in determining which order to recognize for purposes of continuing, exclusive jurisdiction:
>
> . . .
>
> (2) If more than one of the tribunals would have continuing, exclusive jurisdiction under this Chapter, an order issued by a tribunal in the current home state of the child controls and must be so recognized, but if an order has not been issued in the current home state of the child, the order most recently issued controls and must be so recognized.

N.C. Gen. Stat. § 52C-2-207(b)(2) (2001).

A court's determination that a particular child support order is controlling under UIFSA operates only prospectively from the date of the court's ruling to define the parent's current and future obligation to support his or her child. It cannot alter the parent's continuing obligation to pay vested child support arrearages that have already accrued. As a leading commentator has noted:

> A contrary interpretation of UIFSA and FFCCSOA—holding that the recognition of a controlling order retroactively invalidates

"unrecognized" orders or prohibits the collection of child support arrearages that accrued under these "unrecognized" orders *before* the date another order was recognized under UIFSA and FFCCSOA—would almost certainly be inconsistent with the U.S. Constitution and state laws implementing the Bradley amendment.

Saxon, *"Reconciling,"* at 9 (emphasis original).

### III

In the case before us, a child support order was entered in Oregon in 1989 and a child support order was entered in North Carolina in 1992. Plaintiff argues and the trial court agreed that the primary issue in this case is a determination under UIFSA regarding which of these two valid orders controls. Based on a careful review of the record, we do not believe that it is either necessary or appropriate to reach that issue.

As explained above, the first question that this Court must address is the validity of each order. At the time they were entered, both orders were enforceable because they were both entered under URESA and filed prior to UIFSA's becoming effective in North Carolina in 1996. Further, nothing in the North Carolina order specifically expressed an intent to nullify the prior Oregon order.

The next question is the nature of the relief sought. In this case, the record reveals that when the motion in the cause was filed on 4 April 2001, the child had "aged out" and no further support was due prospectively under either order. The record indicates that the only remaining issue is whether defendant is obligated to pay arrears owed to the State of Oregon under the 1989 Oregon order. Since arrearages are the sole issue, there is no need for an analysis of which order controls.

Defendant's obligation as to arrears owed under the North Carolina order would be determined by N.C. Gen. Stat. § 50-13.10. Defendant's obligation regarding arrears under the Oregon order is determined by North Carolina looking to Oregon law to determine if the arrears are vested under Oregon law as well. *Lawrence*, 140 N.C. App. at 712, 538 S.E.2d at 227 ("As to the choice of state law governing the support order, our courts have clarified that the law of the issuing state must be applied by the adopting state."). If so, North Carolina must apply full faith and credit to enforce the Oregon statute under U.S. Const. art. IV, § 1.

We find that Oregon has passed legislation in accordance with the Bradley amendment. Chapter 109.100 of the Oregon statutes, entitled "Petition for support; effect of order; parties," provides:

(2) The order is a final judgment as to any installment or payment of money which has accrued up to the time either party makes a motion to set aside, alter or modify the order, and the court does not have the power to set aside, alter or modify such order, or any portion thereof, which provides for any payment of money which has accrued prior to the filing of such motion.

ORS § 109.100(2) (2001). As Oregon's version of the Bradley amendment, this provision has the same effect on arrears as N.C. Gen. Stat. § 50-13.10. The arrears due under the 1989 Oregon order vested when they became due, constituted a final judgment, and must be accorded full faith and credit under North Carolina law unless barred by a properly-raised statute of limitations defense.

This case must be remanded for a determination by the trial court of what amount, if any, defendant owes in arrears. In making this calculation, the trial court must apply N.C. Gen. Stat. § 52C-2-209:

Amounts collected and credited for a particular period pursuant to a support order issued by a tribunal of another state must be credited against the amounts accruing or accrued for the same period under a support order issued by the tribunal of this State.

When two valid child support orders exist, the obligor receives credit for his child support payments under both orders beginning at the date that both orders came into effect.[1]

## Conclusion

On the facts before us, the trial court's duty was to enforce defendant's obligation to pay plaintiff's vested arrears that accrued under the Oregon order up until the date in 1992 when the North Carolina order was entered. From that point on, defendant owed any arrears that vested under both orders although he is entitled to a

---

1. The official commentary to this section explains how the calculation of arrears is done with multiple child support orders: "For example, full payment of $300 on an order of State C earns a 100% pro tanto discharge of the current support owed on a $200 order of State A, and a 75% credit against a $400 order of State B. Crediting payments against arrears on multiple orders is more complex, and is subject to different constructions in various States. Under the one-order system of UIFSA, an obligor ultimately will be ordered to pay only one sum-certain amount for current support (a sum certain to reduce arrears, if any)."

credit for payments made under either order. On remand, the trial court must determine the appropriate amount of arrears, if any, that defendant owes.

Vacated and Remanded.

Judges WYNN and BRYANT concur.