IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-914

 Filed: 5 November 2019

Mecklenburg County, No. 14 CVD 21633

MICHELE ANN HART, Plaintiff,

 v.

PAUL BRADLEY HART, Defendant.

 Appeal by plaintiff from order entered 3 April 2018 by Judge Jena P. Culler in

Mecklenburg County District Court. Heard in the Court of Appeals 14 February

2019.

 Moen Legal Counsel, by Lynna P. Moen, for plaintiff-appellant.

 James, McElroy & Diehl, P.A., by Caroline T. Mitchell, for defendant-appellee.

 ZACHARY, Judge.

 Michele Ann Hart (“Plaintiff-Mother”) appeals from an order modifying the

child support obligation of Paul Bradley Hart (“Defendant-Father”). Plaintiff-Mother

argues that the trial court (1) lacked jurisdiction to modify a child support order

entered by a Washington court, (2) modified the order without evidence of a

substantial change in circumstances, and (3) erred in determining the appropriate

amount of Defendant-Father’s child support obligation. Upon review, we affirm the

trial court’s order.

 I. Background
 HART V. HART

 Opinion of the Court

 Plaintiff-Mother and Defendant-Father, while citizens of Washington, married

in September 1999, separated in May 2011, and divorced in May 2013. They have

three minor children. Between 2011 and 2013, a Washington trial court entered two

separate orders relating to custody and child support: a Parenting Plan Final Order

(“2011 Custody Order”), and an Order of Child Support (“Support Order”). Because

of an error in the Support Order, the Washington court entered a Corrected Order of

Child Support (“Corrected Order”) obligating Defendant-Father to pay Plaintiff-

Mother $1,839.95 per month in child support.

 In August 2013, Plaintiff-Mother and the children relocated to North Carolina.

As a result, a second parenting plan order was entered by the Washington court the

following year (“2014 Custody Order”). The 2014 Custody Order modified the custody

arrangement to account for the fact that the parties now lived across the country from

one another. At the same time, the trial court entered an order correcting a

typographical error in the Corrected Order concerning Defendant-Father’s obligation

to pay a portion of the children’s uninsured medical expenses (“Correction of

Scrivener’s Error”).

 In December 2014, Defendant-Father moved to North Carolina. Plaintiff-

Mother then filed a motion in Mecklenburg County District Court, requesting that

the North Carolina court assume jurisdiction and modify Washington’s 2014 Custody

 -2-
 HART V. HART

 Opinion of the Court

Order. The Washington court subsequently entered an order transferring

jurisdiction over “all parenting-related issues in this case” to North Carolina.

 On 2 June 2015, Plaintiff-Mother filed a Notice of Registration of Foreign

Support Order seeking enforcement of Defendant-Father’s child support obligation in

North Carolina. Defendant-Father accepted service of the Notice of Registration of

Foreign Support Order on 4 January 2016, and did not contest registration. Although

Plaintiff-Mother’s registration packet included the initial Support Order and the

Correction of Scrivener’s Error, she omitted the Corrected Order.

 On 6 January 2016, the parties consented to a modification of the custodial

arrangement. The North Carolina trial court entered a consent order reflecting the

parties’ agreement concerning custody of the children (“Child Custody Consent

Order”).

 On 26 February 2016, Defendant-Father filed a Motion for Modification of

Child Support, properly attaching all three parts of the controlling order: (1) the

initial Support Order, (2) the Corrected Order, and (3) the Correction of Scrivener’s

Error. The trial court heard Defendant-Father’s motion to modify on 11 October

2017. At the hearing, Plaintiff-Mother moved to dismiss Defendant-Father’s motion

for lack of subject-matter jurisdiction, which was denied in open court. When a

second hearing was held on 30 November 2017 before the Honorable Jena P. Culler,

Plaintiff-Mother once again moved to dismiss the case for lack of subject-matter

 -3-
 HART V. HART

 Opinion of the Court

jurisdiction. After hearing arguments from both parties, Judge Culler denied the

motion.

 At the conclusion of the hearing, the trial court found that “there ha[d] been

several material and substantial changes in circumstances” since the Support Order’s

entry in May 2013. By order entered 3 April 2018, the trial court granted Defendant-

Father’s motion to modify his child support obligation. The trial court ordered

Defendant-Father to pay $569.09 per month in child support, effective 26 February

2016, the date on which he filed his motion to modify. Ultimately, the trial court’s

modification entitled Defendant-Father to a $26,676.30 credit. Plaintiff-Mother

timely appealed.

 II. UIFSA

 Plaintiff-Mother first challenges the trial court’s authority to modify

Defendant-Father’s child support obligation. Specifically, Plaintiff-Mother asserts

that the trial court lacked subject-matter jurisdiction over the matter. We disagree.

 The instant case is governed by the Uniform Interstate Family Support Act

(“UIFSA”), codified in Chapter 52C of our General Statutes. See generally N.C. Gen.

Stat. §§ 52C-1-100 to -9-902. “UIFSA governs the proceedings concerning the

enforceability of any foreign support order that is registered in North Carolina after

1 January 1996.” Uhrig v. Madaras, 174 N.C. App. 357, 359, 620 S.E.2d 730, 732

(2005) (citation omitted), disc. review denied, 360 N.C. 367, 630 S.E.2d 455 (2006).

 -4-
 HART V. HART

 Opinion of the Court

 UIFSA is a federally mandated uniform model act that was enacted “as a

mechanism to reduce the multiple, conflicting child support orders existing in

numerous states[.]” New Hanover Cty. v. Kilbourne, 157 N.C. App. 239, 243, 578

S.E.2d 610, 613-14 (2003). Designed to remedy flaws and inconsistencies that existed

under previous interstate legislation, see id. at 241-43, 578 S.E.2d at 612-13, UIFSA

allows for “only . . . one controlling support order at any given time.” Uhrig, 174 N.C.

App. at 360, 620 S.E.2d at 732. Under UIFSA’s “one order” system, all states “are

required to recognize and enforce the same obligation consistently.” Kilbourne, 157

N.C. App. at 243, 578 S.E.2d at 614.

 The concept of “continuing, exclusive jurisdiction” is crucial to determining

whether North Carolina has jurisdiction to modify, or merely enforce, a child support

order issued by another state. “Any [child support order] issued by a court of another

state may be registered in North Carolina for enforcement” by following the

procedures set forth under N.C. Gen. Stat. § 52C-6-602. Twaddell v. Anderson, 136

N.C. App. 56, 60, 523 S.E.2d 710, 714 (1999), disc. review denied, 351 N.C. 480, 543

S.E.2d 510 (2000). A support order issued in another state is registered and

enforceable in North Carolina upon filing. N.C. Gen. Stat. § 52C-6-603(a)-(b); see also

id. § 52C-1-101(14) (“ ‘Register’ means to file in a tribunal of this State a support

order or judgment determining parentage of a child issued in another state or a

foreign country.”).

 -5-
 HART V. HART

 Opinion of the Court

 Registering a sister state’s child support order for enforcement, however, does

not automatically vest North Carolina courts with authority to modify the order. See

id. § 52C-6-603(c) (“Except as otherwise provided . . . a tribunal of this State shall

recognize and enforce, but may not modify, a registered . . . order if the issuing

tribunal had jurisdiction.”). Indeed, “[o]nce a foreign child support order has been

registered in North Carolina, it can be modified by a North Carolina court only if the

issuing state has lost continuing, exclusive jurisdiction over the order.” Lombardi v.

Lombardi, 157 N.C. App. 540, 543, 579 S.E.2d 419, 420 (2003).

 The issuing state loses continuing, exclusive jurisdiction “in two situations: (1)

if neither the child nor any of the parties continue to reside in the state; or (2) if each

of the parties consented to the assumption of jurisdiction by another state.” Uhrig,

174 N.C. App. at 360, 620 S.E.2d at 732 (citation omitted). The foreign support order

remains enforceable even after the issuing state has lost continuing, exclusive

jurisdiction; however, a North Carolina court lacks authority to modify the order

unless the requirements of N.C. Gen. Stat. §§ 52C-6-611 or 52C-6-613 are met. See

N.C. Gen. Stat. § 52C-6-610. If no other state has continuing, exclusive jurisdiction

over the order and all of the individual parties currently reside in North Carolina, “a

tribunal of this State has jurisdiction to enforce and to modify the issuing state’s child

support order in a proceeding to register that order.” Id. § 52C-6-613(a).

 -6-
 HART V. HART

 Opinion of the Court

 “Whether the trial court complied with the registration procedures set out in

UIFSA is a question of law reviewed de novo on appeal.” Crenshaw v. Williams, 211

N.C. App. 136, 139-40, 710 S.E.2d 227, 230 (2011).

 In the instant case, Plaintiff-Mother, Defendant-Father, and their three

children were living in Washington when a court of that state entered the initial

Support Order in May 2013. Thus, Washington retained continuing, exclusive

jurisdiction to modify its support order until the parties moved or consented to

another state’s exercise of jurisdiction. Plaintiff-Mother and the children moved to

North Carolina in August 2013; Defendant-Father followed soon thereafter,

establishing residence in North Carolina in December 2014. Plaintiff-Mother

registered the Support Order and the Correction of Scrivener’s Error—but not the

Corrected Order—in Mecklenburg County in June 2015. Defendant-Father filed his

motion to modify his child support obligation on 26 February 2016. At that time, both

parties and all of their children were North Carolina residents. No state possessed

continuing, exclusive jurisdiction over the controlling order, nor did the parties

consent to the exercise of jurisdiction by Washington or any other state. Therefore,

pursuant to N.C. Gen. Stat. § 52C-6-613(a), the trial court had jurisdiction to enforce

and modify the Washington support order.

 Nevertheless, as she unsuccessfully argued at two separate hearings before the

trial court, Plaintiff-Mother contends that the trial court lacked subject-matter

 -7-
 HART V. HART

 Opinion of the Court

jurisdiction to modify the Corrected Order, because it was never registered in North

Carolina. However, registration is a procedural requirement, not a jurisdictional one.

See N.C. Gen. Stat. § 52C-6-601 cmt. (providing that “registration is a process, and

the failure to register does not deprive an otherwise appropriate forum of subject

matter jurisdiction”). And as this Court has recognized, a party is not required to

strictly adhere to § 52C-6-602’s procedural requirements in order to register a support

order issued by another state; rather, “substantial compliance” is sufficient “to

accomplish registration of the foreign order.” Twaddell, 136 N.C. App. at 60, 523

S.E.2d at 714 (holding that “the trial court erred in finding that [the] plaintiff had

not met the registration requirements of UIFSA” where, notwithstanding the

plaintiff’s omission of certain required documentation, the registration packet

substantially complied with N.C. Gen. Stat. § 52C-6-602). Although this Court is not

bound by case law from other jurisdictions, see State v. J.C., 372 N.C. 203, 210, 827

S.E.2d 280, 285 (2019), we note that the Twaddell Court’s interpretation of UIFSA’s

registration requirements is consistent with that reached by courts of other

jurisdictions.1

 In the case at bar, the controlling order is composed of three parts: (1) the

initial Support Order, (2) the Corrected Order, and (3) the Correction of Scrivener’s

 1 See, e.g., Kendall v. Kendall, 340 S.W.3d 483, 499 (Tex. App. 2011); In re Marriage of Owen,
108 P.3d 824, 829 (Wash. Ct. App.), disc. review denied, 126 P.3d 1279 (Wash. 2005); Lamb v. Lamb,
707 N.W.2d 423, 435 (Neb. Ct. App. 2005).

 -8-
 HART V. HART

 Opinion of the Court

Error. Stated another way, there is one controlling order, which was corrected twice

by the issuing court in Washington. When Plaintiff-Mother registered the order for

enforcement in North Carolina, she included in her UIFSA registration packet the

Support Order and the Correction of Scrivener’s Error, but she failed to include the

Corrected Order. Nevertheless, Plaintiff-Mother’s inadvertent omission was not a

fatal error in this case.

 Plaintiff-Mother substantially complied with N.C. Gen. Stat. § 52C-6-602 by

registering two of the three parts of the controlling order. As for the third portion of

the controlling order, Plaintiff-Mother referred to the omitted Corrected Order in

several filings before the trial court. Indeed, on the same day that Plaintiff-Mother

registered the controlling order for enforcement in North Carolina, she also filed a

motion in the same court seeking to have Defendant-Father held in contempt of court

in North Carolina for his alleged failure to comply with specific terms of the Corrected

Order that she failed to include in her UIFSA registration packet. Plaintiff-Mother

also referred to the Corrected Order in her second motion to have Defendant-Father

held in contempt of court in North Carolina based on the same grounds. The trial

court’s order denying both of Plaintiff-Mother’s motions specifically references terms

of the Corrected Order. Defendant-Father also attached copies of the initial Support

Order and the two corrections to his motion to modify. Accordingly, neither Plaintiff-

 -9-
 HART V. HART

 Opinion of the Court

Mother nor Defendant-Father were prejudiced by Plaintiff-Mother’s failure to strictly

comply with all of the statutory registration procedures.

 Finally, under the provisions of UIFSA, the trial court had jurisdiction to

modify Defendant-Father’s child support obligation. The official comment to § 52C-

6-609, “Procedure to register child support order of another state for modification,”

provides, in pertinent part:

 If the tribunal has the requisite personal jurisdiction over
 the parties and may assume subject matter jurisdiction as
 provided in Sections 611 or 613, modification may be
 sought independently, in conjunction with registration and
 enforcement, or at a later date after the order has been
 registered and enforced if circumstances have changed.

N.C. Gen. Stat. § 52C-6-609 cmt. Despite her procedural error, Plaintiff-Mother

registered the controlling support order in North Carolina. As explained above,

Washington lost—and North Carolina gained—continuing, exclusive jurisdiction to

modify that order, because all parties resided in North Carolina when Defendant-

Father filed his motion to modify.

 In sum, the controlling order is composed of three parts: (1) the initial Support

Order, (2) the Corrected Order, and (3) the Correction of Scrivener’s Error. That

Plaintiff-Mother inadvertently omitted the Corrected Order from her UIFSA

registration packet did not deprive our courts of subject-matter jurisdiction to modify

Defendant-Father’s child support obligation.

 III. Modification of Child Support

 - 10 -
 HART V. HART

 Opinion of the Court

 Pursuant to N.C. Gen. Stat. § 50-13.7(b), “when an order for support of a minor

child has been entered by a court of another state, a court of this State may, upon

gaining jurisdiction, and upon a showing of changed circumstances, enter a new order

for support which modifies or supersedes such order for support.”

 Plaintiff-Mother next argues that the trial court erroneously modified

Defendant-Father’s child support obligation absent any evidence of a substantial

change in circumstances. We disagree.

 A. Standard of Review

 On appeal, “[c]hild support orders entered by a trial court are accorded

substantial deference . . . and our review is limited to a determination of whether

there was a clear abuse of discretion.” Ferguson v. Ferguson, 238 N.C. App. 257, 260,

768 S.E.2d 30, 33 (2014). Under this standard of review, the trial court’s order will

be upheld unless its “actions were manifestly unsupported by reason.” Head v.

Mosier, 197 N.C. App. 328, 332, 677 S.E.2d 191, 195 (2009) (citation omitted).

 B. Substantial Change in Circumstances

 A child support order is modifiable at any time upon motion in the cause, id.

at 333, 677 S.E.2d at 195, and is “subject to alteration upon a change of circumstances

affecting the welfare of the child or children.” Bishop v. Bishop, 245 N.C. 573, 576,

96 S.E.2d 721, 724 (1957). “The moving party has the burden of showing a substantial

 - 11 -
 HART V. HART

 Opinion of the Court

change of circumstances affecting the welfare of the child.” Ebron v. Ebron, 40 N.C.

App. 270, 271, 252 S.E.2d 235, 236 (1979).

 Modifying a child support order is a two-step process. Head, 197 N.C. App. at

333, 677 S.E.2d at 195. “First, a court must determine whether there has been a

substantial change in circumstances since the date the existing child support order

was entered.” Id. “Upon finding a substantial change in circumstances, the second

step is for the court to enter a new child support order that modifies and supersedes

the existing child support order.” Id. at 334, 677 S.E.2d at 196.

 A substantial change in circumstances may be shown in several ways,

including evidence of

 a substantial increase or decrease in the child’s needs . . . ;
 a substantial and involuntary decrease in the income of the
 non-custodial parent even though the child’s needs are
 unchanged . . . ; a voluntary decrease in income of either
 supporting parent, absent bad faith, upon a showing of
 changed circumstances relating to child oriented
 expenses . . . ; and, for support orders that are at least
 three years old, proof of a disparity of fifteen (15) percent
 or more between the amount of support payable under the
 original order and the amount owed under North
 Carolina’s Child Support Guidelines based upon the
 parties’ current income and expenses.

Wiggs v. Wiggs, 128 N.C. App. 512, 515, 495 S.E.2d 401, 403 (1998), overruled on other

grounds by Pulliam v. Smith, 348 N.C. 616, 501 S.E.2d 898 (1998). Although multiple

factors may contribute, this Court has held that a substantial change in

circumstances can also arise from a single, dispositive factor. See, e.g., Kowalick v.

 - 12 -
 HART V. HART

 Opinion of the Court

Kowalick, 129 N.C. App. 781, 787, 501 S.E.2d 671, 675 (1998) (determining that a

change in custody was sufficient to constitute a substantial change in circumstances).

 C. The Trial Court’s Findings of Fact

 In the instant case, the record is replete with evidence supporting a

determination that there had been a substantial change in circumstances since the

entry of the previous order. In particular, there was a significant difference in the

amount of time that the children were able to spend with Defendant-Father once they

had all moved to North Carolina.

 The trial court made the following findings of fact regarding the change in the

parties’ custodial arrangement:

 54. Since the entry of the [initial] Support Order, the
 parties have modified the custodial schedule so that
 Defendant/Father is spending more time with the minor
 children.

 55. Per the parties’ Child Custody Consent Order, the
 parties share legal and physical custody of the minor
 children. Defendant/Father has parenting time with the
 minor children on alternating weeks from the time school
 recesses on Friday through the start of school on Monday
 morning. In addition, Defendant/Father has parenting
 time with the children every Tuesday from the time school
 recesses through the start of school on Wednesday
 morning.

 56. Now, the minor children stay with Defendant/Father at
 his home in North Carolina as opposed to staying in a hotel
 with Defendant/Father when he traveled from Washington
 to North Carolina.

 - 13 -
 HART V. HART

 Opinion of the Court

 57. Now, Defendant/Father has six of the ten weeks of
 summer vacation with the minor children as opposed to
 only two weeks of vacation in the summer as previously
 provided in the Washington [Custody Orders].

 58. . . . Defendant/Father now has significantly more time
 with the minor children per the Child Custody Consent
 Order.

 Plaintiff-Mother contends that the trial court erred in finding that Defendant-

Father has more parenting time with the children now than he had at the time of the

entry of the 2014 Custody Order. However, competent evidence supports the trial

court’s findings that, under the provisions of the parties’ Child Custody Consent

Order, Defendant-Father was spending substantially more time with the children

than he was at the time that the 2014 Custody Order was entered by the Washington

court.

 While the trial court found “several material and substantial changes in

circumstances,” the significant change in the parties’ custodial arrangement alone

was sufficient to warrant modification of the existing support order. Accordingly, the

trial court did not err in modifying Defendant-Father’s child support obligation.

 IV. Child Support Obligation

 Finally, Plaintiff-Mother argues that the trial court “abused its discretion in

calculating child support off guideline from February 2016 through August 2017,” in

that the parties’ combined monthly gross income did not exceed the $25,000

 - 14 -
 HART V. HART

 Opinion of the Court

maximum monthly gross income to which the child support schedule of the Guidelines

is applicable. Plaintiff-Mother is mistaken.

 A. Standard of Review

 As previously noted, “[i]n reviewing child support orders, our review is limited

to a determination whether the trial court abused its discretion. Under this standard

of review, the trial court’s ruling will be overturned only upon a showing that it was

so arbitrary that it could not have been the result of a reasoned decision.” Spicer v.

Spicer, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005). However, it is well

established that the trial court “must . . . make sufficient findings of fact and

conclusions of law to allow the reviewing court to determine whether a judgment, and

the legal conclusions that underlie it, represent a correct application of the law.” Id.

We have reviewed myriad financial issues relating to child support under an abuse

of discretion standard. See, e.g., Hinshaw v. Kuntz, 234 N.C. App. 502, 505, 760

S.E.2d 296, 299 (2014) (reviewing the trial court’s exclusion of parties’ bonus income);

Ludlam v. Miller, 225 N.C. App. 350, 355, 739 S.E.2d 555, 558 (2013) (reviewing the

trial court’s failure to consider non-recurring income); Midgett v. Midgett, 199 N.C.

App. 202, 206, 680 S.E.2d 876, 879-80 (2009) (reviewing the trial court’s calculation

of father’s gross income and thus his child support obligation).

 B. Child Support Obligation

 - 15 -
 HART V. HART

 Opinion of the Court

 After determining that there has been a substantial change in circumstances

warranting a modification of child support, the trial court must next calculate the

appropriate amount of support and enter a new order. Head, 197 N.C. App. at 334,

677 S.E.2d at 196. The “trial court has the discretion to make a modification of a

child support order effective from the date a petition to modify is filed as to support

obligations that accrue after such date.” Mackins v. Mackins, 114 N.C. App. 538, 546-

47, 442 S.E.2d 352, 357, disc. review denied, 337 N.C. 694, 448 S.E.2d 527 (1994).

 “The court shall determine the amount of child support payments by applying

the presumptive guidelines[.]” N.C. Gen. Stat. § 50-13.4(c) (2017). The Guidelines

“apply as a rebuttable presumption in all legal proceedings involving the child

support obligation of a parent.” N.C. Child Support Guidelines, Annotated Rules 51

(2019).

 The gross income of the parents is used to calculate the presumptive child

support obligation. Fink v. Fink, 120 N.C. App. 412, 424, 462 S.E.2d 844, 853 (1995),

disc. review denied, 342 N.C. 654, 467 S.E.2d 710 (1996). “Income” is broadly defined

under the Guidelines as

 a parent’s actual gross income from any source, including
 but not limited to income from employment or self-
 employment (salaries, wages, commissions, bonuses,
 dividends, severance pay, etc.), ownership or operation of a
 business, partnership, or corporation, rental of property,
 retirement or pensions, interest, trusts, annuities, capital
 gains, Social Security benefits, workers compensation
 benefits, unemployment insurance benefits, disability pay

 - 16 -
 HART V. HART

 Opinion of the Court

 and insurance benefits, gifts, prizes and alimony or
 maintenance received from persons other than the parties
 to the instant action.

Guidelines, at 53.

 A trial court will generally determine a parent’s actual income at the time that

the child support obligation is established. Frey v. Best, 189 N.C. App. 622, 631, 659

S.E.2d 60, 68 (2008). When a parent receives income “on an irregular, non-recurring,

or one-time basis, the court may average or prorate the income over a specified period

of time or require an obligor to pay as child support a percentage of [the] non-

recurring income . . . equivalent to the percentage of [the] recurring income paid for

child support.” Guidelines, at 53.

 Currently, the child support schedule provided with the Guidelines does not

provide a support obligation when the parties’ combined monthly gross income is

greater than $30,000. Id. at 52. At the time that the judgment was entered in the

instant case, however, the Guidelines provided that the child support schedule was

inapplicable if the parties’ monthly gross income exceeded $25,000. Guidelines, at 52

(2018). Under such circumstances, the trial court must determine the appropriate

amount of child support on a case-by-case basis. Id.

 Here, the trial court found that Plaintiff-Mother’s monthly gross income was

$13,856.21, and that Defendant-Father’s monthly gross income totaled $13,515.68;

thus, the parties’ combined monthly gross income exceeded the $25,000 maximum

monthly gross income to which the child support schedule of the Guidelines applied.

 - 17 -
 HART V. HART

 Opinion of the Court

 The trial court made the following findings of fact relevant to its determination

of the parties’ monthly gross income, which Plaintiff-Mother challenges on appeal as

not supported by competent evidence:

 65. Per Plaintiff/Mother’s [Financial Affidavit],
 Plaintiff/Mother’s gross income is $9,563.48. This total
 includes Plaintiff/Mother’s salary, ordinary dividends,
 pension income, negative rental income, and capital gains
 and losses.

 66. Plaintiff/Mother’s [Financial Affidavit] does not include
 her recent raise, annual bonus, stock income, Stay Fit
 award, or reasonable rental income as monthly gross
 income.

 67. In September of 2017, Plaintiff/Mother received a pay
 raise. Plaintiff/Mother’s new base bay is $9,580.32 per
 month.

 68. In September of 2017, Plaintiff/Mother received an
 annual bonus in the amount of $18,700.00. This Court
 finds that Plaintiff/Mother receives additional bonus
 income in the amount of $1,558.00 each month.

 69. In September of 2017, Plaintiff/Mother received annual
 stock income in the amount of $24,376.68. This Court finds
 that Plaintiff/Mother received additional stock income in
 the amount of $2,031.39 each month.

 70. Plaintiff/Mother receives $800.00 per year for enrolling
 in the Microsoft Stay Fit Plan. This Court finds that
 Plaintiff/Mother receives additional income in the amount
 of $66.67 each month.

 ....

 75. This Court finds that Plaintiff/Mother’s total gross
 monthly income is $13,856.21.

 - 18 -
 HART V. HART

 Opinion of the Court

 ....

80. This Court finds that Defendant/Father’s total gross
monthly income is $13,515.68.

81. The parties’ total gross annual income exceeds
$300,000.00 so the North Carolina Child Support
Guidelines are not applicable in this matter.

82. Plaintiff/Mother’s income represents 51% of the parties’
total gross annual income and Defendant/Father’s income
represents 49% of the parties’ total gross annual income.

 ....

98. Per the parties’ respective income percentages,
Plaintiff/Mother’s prorated portion of the total expenses for
the children each month is $4,326.73 and
Defendant/Father’s prorated portion is $4,220.38.

 ....

101. This Court calculated child support by subtracting the
amounts paid by each party toward the total expenses for
the children each month in his or her household from the
parties’ respective prorated portions. A chart outlining this
Court’s child support calculation is attached hereto as
Exhibit 2 and hereby incorporated by reference.

102. Considering the income and expenses of the parties
and the reasonable needs and expenses of the minor
children, Defendant/Father’s child support obligation to
Plaintiff/Mother should be $569.09 per month.

103. Defendant/Father’s child support obligation should be
modified effective February 26, 2016.

 ....

 - 19 -
 HART V. HART

 Opinion of the Court

 105. As such, as of December 1, 2017, Defendant/Father
 has a child support credit in the amount of $26,676.30. A
 chart outlining this Court’s child support credit calculation
 is attached hereto as Exhibit 3 and hereby incorporated by
 reference.

 Plaintiff-Mother also challenges conclusions of law numbers 5, 7, 8, 9, and 10:

 5. Defendant/Father’s Motion to Modify should be granted.

 ....

 7. The North Carolina Child Support Guidelines do not
 apply in this matter as the combined monthly gross income
 of the parties exceeds $25,000.00 per month.

 8. Considering the income and expenses of the parties and
 the reasonable needs and expenses of the minor children,
 Defendant/Father’s child support obligation to
 Plaintiff/Mother should be $569.09 per month.

 9. The amount of child support is reasonable and entry of
 this Order is in the bests [sic] interests of the minor
 children.

 10. Any finding of fact which would be an appropriate
 Conclusion of Law is incorporated herein by reference.

 Finally, Plaintiff-Mother asserts that decretal paragraphs 1 and 2 are not

supported by competent evidence, and constitute errors of law and an abuse of

discretion:

 1. Defendant/Father’s Motion to Modify is granted.

 2. Child Support Obligation: Defendant/Father’s child
 support obligation to Plaintiff/Mother is $569.09 per
 month. Defendant/Father’s modified child support
 obligation is effective February 26, 2016. Since March 1,

 - 20 -
 HART V. HART

 Opinion of the Court

 2016, Defendant/Father has paid child support to
 Plaintiff/Mother in the amount of $1,839.39 each month.
 As such, as of December 1, 2017, Defendant/Father has a
 child support credit in the amount of $26,676.30.
 Beginning December 1, 2017, Defendant/Father shall not
 pay a child support obligation to Plaintiff/Mother each
 month but shall subtract said amount owed each month
 from the child support credit until said credit is fully
 depleted. Upon depletion of the child support credit,
 Defendant/Father shall pay to Plaintiff/Mother child
 support in the amount of $569.09 per month on the first
 day of each month thereafter.

 In challenging these portions of the trial court’s order, Plaintiff-Mother

contends that the trial court erred in determining Defendant-Father’s child support

obligation based on the parties’ current income, but making the modification effective

on 26 February 2016, the date on which Defendant-Father filed his motion to modify.

Plaintiff-Mother asserts that, in doing so, the trial court improperly “applied the

decreased child support amount from February 2016 through October 2017” while

assigning Plaintiff-Mother “three large income changes that occurred in September

2017.” We disagree.

 The method by which the trial court determines a party’s child support

obligation is manifest. As explained above, although a party’s ability to pay is

generally determined by the party’s actual income at the time the existing order is

modified, Frey, 189 N.C. App. at 631, 659 S.E.2d at 68, the decision of whether “to

make a modification . . . effective from the date a petition to modify is filed” is within

the trial court’s discretion, Mackins, 114 N.C. App. at 547, 442 S.E.2d at 357.

 - 21 -
 HART V. HART

 Opinion of the Court

 Plaintiff-Mother’s testimony revealed each source of income. However, this

Court has held that a trial court cannot merely restate a witness’s testimony as a

finding of fact in its order. See Moore v. Moore, 160 N.C. App. 569, 571-72, 587 S.E.2d

74, 75 (2003) (“Recitations of the testimony of each witness do not constitute findings

of fact by the trial judge, because they do not reflect a conscious choice between the

conflicting versions of the incident in question which emerged from all the evidence

presented.” (quotation marks omitted)). Nonetheless, Plaintiff-Mother’s testimony

was verified by the paystubs that she submitted to the court as evidence. Her

September 2017 paystubs plainly disclosed her pay raise, bonus, and stock award.

These paystubs supported Plaintiff-Mother’s testimony, and ultimately allowed the

trial court to make sufficient findings to resolve the issue of Plaintiff-Mother’s

monthly gross income. Cf. In re Green, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193,

195 n.1 (1984) (“The purported ‘findings’ in the order under discussion do not even

come close to resolving the disputed factual contentions of the parties . . . .”).

 In that the trial court’s findings of fact regarding the parties’ monthly gross

income are supported by the evidence at trial, the trial court did not abuse its

discretion in its determination of the appropriate child support obligation.

 V. Conclusion

 We conclude that the trial court properly exercised jurisdiction to modify the

controlling Washington child support order. Moreover, the trial court did not abuse

 - 22 -
 HART V. HART

 Opinion of the Court

its discretion in determining that there had been a substantial change in

circumstances warranting modification of the existing support order, or in

determining the appropriate amount of child support in this matter. Therefore, we

affirm the trial court’s order.

 AFFIRMED.

 Judges BERGER and HAMPSON concur.

 - 23 -